```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

HELEN DOLAN, in her capacity                        CIVIL ACTION
as natural tutrix for J.D.D.

VERSUS                                              NO: 12-2911

PARISH OF ST. TAMMANY, ET AL.                       SECTION: R

## ORDER AND REASONS

Before the Court is the motion to dismiss of defendants Parish of St. Tammany, Walter Reed, and Ysonde Boland.[1] Also before the Court is plaintiff's motion for a limited stay of her causes of action.[2] For the following reasons, the Court GRANTS defendants' motion to dismiss and GRANTS plaintiff's motion for a limited stay of all remaining claims.

**I.   BACKGROUND**

This action arises out of the arrest, confinement, and prosecution of plaintiff Helen Dolan's seventeen year-old son, J.D.D. On July 25, 2012, deputies with the Washington Parish Sheriff's Office went to the Dolan home to place J.D.D. into custody pursuant to a warrant issued for an investigation of an alleged sexual battery.[3] Deputy Tommie Sorrell read J.D.D. his *Miranda* rights in the presence of his parents, rights that

---

[1]   R. Doc. 19.

[2]   R. Doc. 25.

[3]   R. Doc. 1 at 4.

plaintiff and J.D.D. allegedly invoked.[4] Deputy Damon Mitchell of the Washington Parish Sheriff's Office then transported J.D.D. to the Bogalusa police station, again read J.D.D. his *Miranda* rights, and began an interrogation despite J.D.D.'s invocation of his right to counsel.[5] At the police station, Sorrell and Jason Mire, of the St. Tammany Parish Sheriff's Office, allegedly interrogated J.D.D. for nearly one and one-half hours, recording his statements, and persuaded J.D.D. to sign a *Miranda* waiver.[6] Plaintiff alleges that defendants obtained an arrest warrant after the interrogation, and J.D.D. was booked into the Washington Parish Jail.[7]

On July 27, 2012, J.D.D. was transported to the St. Tammany Parish Jail, where he remained until August 1, 2012. Plaintiff alleges that J.D.D.'s treatment in the jail violated his civil rights, specifically his confinement in a holding cell known as a "squirrel cage," his inability to take his prescribed medication, and the lack of adequate food.[8] Plaintiff also claims that St. Tammany Parish District Attorney Walter Reed and Assistant District Attorney Ysonde Boland filed a Bill of Information

---

[4]  R. Doc. 1 at 5.

[5]  *Id.*

[6]  *Id.* at 6.

[7]  *Id.* at 7.

[8]  *Id.* at 9, 12.

against J.D.D. despite receiving information indicating that J.D.D.'s *Miranda* rights had been violated.

On December 9, 2012, Helen Dolan filed suit on behalf of J.D.D. against St. Tammany Parish, St. Tammany Parish Sheriff Jack Strain, Washington Parish Sheriff Randy Seal, Tommie Sorrell, Damon Mitchell, Jason Mire, Walter Reed, and Ysonde Boland. Citing J.D.D.'s status as a minor, plaintiff claims that J.D.D.'s constitutional rights were violated through his arrest, lack of access to counsel, confinement, and prosecution. Walter Reed, Ysonde Boland, and St. Tammany Parish filed a motion to dismiss, which is now before the Court. Plaintiff filed a motion to stay her causes of action other than those related to the conditions of the St. Tammany Parish Jail, contending that J.D.D.'s Fifth Amendment right against self-incrimination would be violated in his criminal matter were he required to provide deposition testimony in the civil proceeding.

**II.   STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1960 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id.* In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555; *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007).

**III. DISCUSSION**

    **A.  Motion to dismiss of St. Tammany Parish**

Defendants seek dismissal of St. Tammany Parish on the ground that it does not exercise the requisite control over the operations of the St. Tammany Parish Jail. To establish liability against a local government entity under § 1983, a plaintiff must point to the government's policy or custom that caused the alleged constitutional deprivation. *See Monell v. New York City Dept. of Soc. Serv.,* 436 U.S. 658, 690-91 (1978). Local government entities may also face liability under § 1983 as a result of a breach of a duty imposed by state or local law. *See Bennett v. City of Slidell,* 728 F.2d 762, 767 (5th Cir. 1984); *see also McMillan v. Johnson,* 88 F.3d 1573, 1577 (11th Cir. 1996), *cert. denied,* 520 U.S. 781 (1997). If local or state law imposes a duty upon a local government entity, liability under § 1983 may result if municipal officials have actual or constructive knowledge of the constitutional violations and fail to carry out their duty to correct them. *See Bennett,* 728 F.2d at 768.

State law determines whether a particular governmental entity has an obligation or policymaking authority. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 123 (1988) (plurality opinion); *see also O'Quinn v. Manual,* 773 F.2d 605, 608 (5th Cir. 1985). Under Louisiana law, sheriffs derive their authority from the state constitution, *see* La. Const. art. 5 § 27, and are the final policymakers with respect to the management of jails. *See Jones v. St. Tammany Parish Jail,* 4 F. Supp. 2d 606, 613 (E.D.

La. 1998). The sheriff's office controls the jail's inmates and employees, as well as the daily management and operation of the jail. *See* La. R.S. § 13:5539; 15:704; *O'Quinn v. Manuel,* 773 F.2d at 609 (*quoting Amiss v. Dumas,* 411 So.2d 1137, 1141 (La. Ct. App. 1982), *writ denied,* 415 So.2d 940 (La. 1982)).

Conversely, parishes bear the responsibility of financing and physically maintaining the jails. *See* La. R.S. § 15:702; *Griffin v. Foti,* 523 So.2d 935, 937 (La. Ct. App. 1988); *see also O'Quinn,* 773 F.2d at 609. A parish has no authority over the operations of the jail or the management of the sheriff's employees. *See Jones,* 4 F. Supp. 2d at 613; *O'Quinn,* 773 F.2d at 609 (administration of the jail is province of sheriff). A parish's obligations thus do not grant it the authority to control how the sheriff fulfills his duties. *See Jones,* 4 F. Supp. 2d at 613 (citing *Jenkins v. Jefferson Parish Sheriff's Office,* 402 So.2d 669, 671 (La. 1981)).

Plaintiff claims that her son was placed with other inmates in a "squirrel cage," where he suffered physical injuries and did not receive proper medication or adequate food. Plaintiff attached to her complaint a report sent by the United States Department of Justice to the president of St. Tammany Parish on July 12, 2012, in which the Department of Justice criticized the jail's treatment of people with mental health problems and cited

6

the use of holding cells, the so-called "squirrel cages."[9] Plaintiff argues that the Parish thus knew that the holding cells should not be used and continued to allow inmates to be housed in an underfunded facility.

Although the decision to place J.D.D. in such a cell rests with the sheriff and his personnel, it is true that if no other housing options were available due to overcrowding or a lack of funding, the Parish could be considered ultimately responsible due to its failure to adequately finance the jail. *Cf. O'Quinn*, 773 F.2d 605, 609-610 (plaintiff had no claim against police jury that funded jail in connection with beatings he received in jail, since he did not allege that the jail was improperly funded or maintained or that police jury knew about its inadequacies). But, without specific allegations that underfunding produced the harm at issue, any treatment of inmates could be linked to a lack of proper financing, which would vitiate the clear statutory scheme of dividing responsibility for the jails between the parishes and the sheriffs.

Plaintiff does not claim that any failure to provide J.D.D. with medication and food stemmed from the jail's lack of funding for such inmate needs. Therefore, these claims concern the acts of the sheriff's office in operating the jail. As to J.D.D.'s placement in a holding cell, plaintiff claims that the Parish is

---

[9] R. Doc. 1-4.

responsible for "initiating, promoting, permitting and/or acquiescing in placing and keeping J.D.D. in a 'squirrel cage.'"[10] Plaintiff asserts that the Parish failed to train its employees, including Sheriff Strain, regarding the unconstitutional use of squirrel cages[11] and failed "to maintain adequate policy and/or procedure over which it has any control, responsibility, supervision and/or authority."[12]

From the face of plaintiff's complaint, it is clear that her claims against the Parish are based on its alleged oversight of the jail premises and staff and thus its responsibility for the "jailhouse treatment" inflicted on her son.[13] Plaintiff does not allege that jail overcrowding or a lack of funding necessitated her son's placement in a holding cell but asserts only that the Parish knew that the jail's conditions were inadequate. Without claims that jail personnel were forced to place J.D.D. in a holding cell due to the Parish's failure to maintain or fund the jail, any link between the Parish's duties and J.D.D.'s treatment is too attenuated in light of the sheriff's responsibility to control inmates and manage the daily operations of the jail. *See, e.g., Williamson v. Louisiana*, No. 08-4470, 2008 WL 4811178, at

---

[10] R. Doc. 1 at 15.

[11] *Id.* at 16.

[12] *Id.* at 19.

[13] *Id.* at 9.

*2 (E.D. La. Oct. 29, 2008) (rejecting claim against St. Tammany Parish based on conditions of confinement in jail and identifying sheriff as the proper defendant for such a claim).

Further, plaintiff's claim that the Parish failed to maintain adequate policies or supervise the jail fails to acknowledge the Parish's lack of oversight over the housing of inmates and the individual decisions to place inmates in holding cells.[14] Indeed, the letter from the Department of Justice concerning the use of holding cells demonstrates the authority exercised by the sheriff's personnel rather than the Parish. Although addressed to the Parish president, the letter discusses the changes in policies, practices, and procedures proposed by jail officials, who are employees of the sheriff's office, not the Parish.[15] Because plaintiff's claims focuses on actions taken by individuals over whom the Parish has no control, plaintiff has not identified a duty that St. Tammany Parish breached or an official policy or custom producing a constitutional violation.

---

[14] Plaintiff cites the case *Alberti v. Sheriff of Harris County, Tex.*, 937 F.2d 984 (5th Cir. 1991) in support of her position that the Parish cannot escape responsibility for jail conditions on the grounds that it lacks authority to make any changes. The case is distinguishable, because it concerned the Texas statutory division of authority and addressed the state's responsibility for the treatment of prisoners who, despite being housed in county-operated facilities, were state prisoners and thus in the custody of the state.

[15] R. Doc. 1-4 at 1.

Accordingly, the Court concludes that plaintiff's claims against St. Tammany Parish must be dismissed.

**B.     Motion to dismiss of Walter Reed and Ysonde Boland**

Defendants Walter Reed and Ysonde Boland also move to dismiss the claims against them. They first argue that the doctrine of absolute immunity precludes plaintiff's § 1983 claims against them in their individual capacities since they acted in furtherance of their prosecutorial duties. Although § 1983 does not contain a provision allowing for a defense of official immunity, the United States Supreme Court has held that § 1983 did not abrogate immunities "well grounded in history and reason." *Cousin v. Small*, No. 00-69, 2001 WL 617455, at *3 (E.D. La. June 4, 2001), *aff'd*, 325 F.3d 627 (5th Cir. 2003) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)). The Supreme Court recognizes two kinds of immunity, absolute and qualified, and courts look to "the nature of the function performed, not the identity of the actor who performed it" to determine whether a defendant is entitled to absolute immunity. *Mays v. Sudderth*, 97 F.3d 107, 110 (5th Cir. 1996)(quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993)).

Prosecutors enjoy absolute immunity for those activities "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976); *see also Lampton v. Diaz*, 639 F.3d 223, 226 (5th Cir. 2011). Accordingly, "in initiating and presenting the State's case, the prosecutor is

10

immune from a civil suit for damages under § 1983." *Imbler,* 424 U.S. at 431. Absolute immunity does not shield a prosecutor's administrative duties or those investigatory functions that do not relate to his preparation for the initiation of a prosecution or for judicial proceedings. *Buckley,* 509 U.S. at 273. An official seeking absolute immunity bears the burden of showing that such immunity is justified. *See Burns v. Reed,* 500 U.S. 478, 486 (1991).

Here, plaintiff contends that Reed and Boland knew of the alleged constitutional violations involving J.D.D.'s *Miranda* warnings and the waiver of his *Miranda* rights but nevertheless accepted J.D.D.'s recorded statement and filed a Bill of Information. Plaintiff does not claim that Reed and Boland questioned J.D.D. themselves or performed any sort of investigatory function unrelated to their preparation of charges. Rather, plaintiff asserts that defendants "were made aware of the investigation of J.D.D." and disregarded the police reports and investigative file that revealed the alleged *Miranda* violations.[16] Therefore, plaintiff attacks defendants' decision to file a Bill of Information based on the record of the investigation. But, prosecutorial immunity extends to a prosecutor's "actions in initiating, investigating, and pursuing a criminal prosecution" and covers the decision whether to file

---

[16] R. Doc. 1 at 13.

11

criminal charges. *Quinn v. Roach*, 326 Fed. Appx. 280, 292 (5th Cir. 2009); *see also Kalina v. Fletcher,* 522 U.S. 118, 125 (1997). Therefore, regardless of any deficiencies in the arrest and questioning of J.D.D., plaintiff's allegations are without merit, because they concern defendants' initiation of a suit, an action protected by absolute immunity.

Further, to the extent that plaintiff attacks defendants' administrative procedures, rather than their strictly prosecutorial duties, in arguing that they did not maintain adequate policies to avoid misfiling charges, this claim is also without merit. The Supreme Court has held that absolute immunity extends to administrative procedures that involve training and supervising attorneys on activities that require legal knowledge and the exercise of discretion. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009). Thus, a claim stemming from defendants' responsibility for establishing practices on how to review investigative reports and determine whether to file charges is clearly barred.

As to plaintiff's claims against Reed and Boland in their official capacities, official capacity suits are tantamount to suits against the public entity that the official represents. *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466-67 (5th Cir. 1999). To hold a public entity liable under § 1983 for the misconduct of an employee, "a plaintiff must initially allege that an official policy or custom 'was a cause in fact of the

deprivation of rights inflicted.'" *Spiller v. City of Texas City, Police Dep't,* 130 F.3d 162, 167 (5th Cir. 1997) (quoting *Leffall v. Dallas Indep. Sch. Dist.,* 28 F.3d 521, 525 (5th Cir. 1994)).

A public entity cannot be held liable under § 1983 on a theory of respondeat superior. *Kentucky v. Graham,* 473 U.S. 159, 168 (1985); *Monell,* 436 U.S. at 691. "To satisfy the cause in fact requirement, a plaintiff must allege that 'the custom or policy served as the moving force behind the [constitutional] violation' at issue, or that [his] injuries resulted from the execution of the official policy or custom." *Spiller,* 130 F.3d at 167 (citations omitted). "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Id.*

Plaintiff fails to allege specific facts about a policy or custom that led Reed and Boland to violate her son's constitutional rights by filing charges. Instead, she states only conclusorily that defendants "invoked the office policy or custom of accepting J.D.D.'s statement and filing a Bill of Information."[17] Although the District Attorney's Office may indeed use statements obtained by police and arrest warrants when determining whether to file charges, plaintiff alleges no facts demonstrating that a policy exists under which district attorneys

---

[17]   R. Doc. 1 at 14.

rely on improper interrogations or turn a blind eye to deficiencies in the record.

Indeed, the precise constitutional violation alleged by plaintiff is unclear. Plaintiff claims that the investigatory file did not indicate whether the arresting officers informed J.D.D.'s parents of his *Miranda* rights or obtained a *Miranda* waiver from them. But, plaintiff's complaint reveals that J.D.D. was first read his *Miranda* rights in the presence of his parents and that J.D.D. signed a *Miranda* waiver. As to whether J.D.D.'s parents needed to sign the waiver on his behalf, under Louisiana law, seventeen year olds are considered adults rather than juveniles for the purposes of criminal responsibility. *See* La. Const. art. V, § 19; *State v. Edwards*, 406 So. 2d 1331, 1340 (La. 1981) (parent did not need to be present during criminal interrogation of seventeen year old since he did not qualify as juvenile under Louisiana law). Thus, courts have held *Miranda* waivers signed by seventeen year olds to be valid. *See, e.g., State v. Gaskin*, 412 So.2d 1007 (La. 1982); *State v. Beck,* 445 So. 2d 470, 474 (La. Ct. App. 1984), *writ denied,* 446 So. 2d 315 (La. 1984).[18]

---

[18] The United States Supreme Court has held that a child's age informs a *Miranda* custody analysis, but in so doing, the Court also indicated that a child's age may not be a significant factor in every case, for example when individuals near the age of majority. *See J.D.B. v. North Carolina*, 131 S. Ct. 2394, 2406 (2011). Further, the *J.D.B* suit concerned whether the questioning of a child occurred in a custodial setting such that he needed to be afforded *Miranda* warnings. Here, plaintiff states that J.D.D.

Moreover, plaintiff may not base a § 1983 claim on a *Miranda* violation alone, for the *Miranda* rule "is a prophylactic employed to protect against violations of the Self-Incrimination Clause." *U.S. v. Patane*, 542 U.S. 630, 636 (2004). Violations occur if wrongly-elicited statements are admitted into evidence at trial, and the appropriate remedy is exclusion of the statements. *Id*. at 641; *see also Chavez v. Martinez*, 538 U.S. 760, 767 (2003) ("Statements compelled by police interrogations of course may not be used against a defendant at trial, but it is not until their use in a criminal case that a violation of the Self-Incrimination Clause occurs.")(internal citation omitted). Therefore, any inadequate *Miranda* procedures do not, by themselves, qualify as constitutional violations that may be pursued under § 1983. Accordingly, even if a policy existed under which district attorneys deliberately chose not to ensure that *Miranda* rights were properly waived when initiating prosecutions, such a policy, standing alone, would not constitute the "moving force" behind a constitutional violation. *See Spiller*, 130 F.3d at 167. The Court thus finds that plaintiff's claims against Reed and Boland in their official capacities must be dismissed.

C.   **Motion for limited stay**

---

was read his *Miranda* rights, and in any event, under Louisiana law, J.D.D. is considered an adult for the purposes of criminal responsibility.

Plaintiff requests that all of her causes of action be stayed until the conclusion of J.D.D.'s criminal matter, except for the claims against St. Tammany Parish and Sheriff Jack Strain related to jail conditions. Plaintiff argues that, due to his pending criminal case in state court, J.D.D. may be unable to participate fully in the civil litigation without incriminating himself through deposition testimony. J.D.D.'s trial was set for February 19, 2013 but was continued without a new date being set.

Defendants argue that plaintiff's motion to stay should not affect the motion to dismiss filed by St. Tammany Parish, Walter Reed, and Ysonde Boland. Indeed, these defendants filed a motion to defer consideration of plaintiff's motion for a limited stay until after the Court considered defendants' motion to dismiss.[19] Because the Court finds that plaintiff's claims against these defendants cannot be maintained for reasons that J.D.D.'s deposition testimony would not alter, plaintiff's motion for a limited stay is denied as to these defendants.[20]

---

[19]   R. Doc. 28.

[20]   Plaintiff opposes defendants' motion to defer consideration of plaintiff's motion for a limited stay and argues that counsel for St. Tammany Parish, Reed, and Boland should not be permitted to request that the Court defer its consideration, since the defendants have conflicting interests in a limited stay. *See* R. Doc. 30. The Court finds plaintiff's argument to be without merit, as all three defendants contend that their motion to dismiss addresses questions of law that are unrelated to J.D.D.'s criminal suit. The Court also finds that there is no basis for disqualification of defendants' counsel, as suggested by plaintiff.

In determining whether to stay civil cases in the face of parallel criminal proceedings, courts consider 1) the overlap between the civil and criminal case; 2) the status of the criminal case; 3) private interests of the plaintiff; 4) private interest of the defendants; 5) the interests of the court; and 6) the public interest. *See Southeast Recovery Group, LLC v. BP America, Inc.*, 278 F.R.D. 162, 166-67 (E.D. La. 2012). Plaintiff's remaining civil claims concern her son's arrest, incarceration, and access to counsel. Although all of these claims do not bear directly on J.D.D.'s criminal charges, J.D.D.'s ability to discuss his interrogation by sheriff personnel may be limited by a desire to avoid self-incrimination. The date of J.D.D.'s state court trial is presently unknown, but as it was initially set for February 2013, it may be rescheduled within the next few months, which weighs in favor of a short stay of the civil proceedings. Further, defendants do not claim that they will be prejudiced by a delay in litigation, and the Court does not find that a limited stay will impact the Court's handling of the suit or negatively affect the public. The Court thus finds that a short stay is warranted for plaintiff's remaining claims so that J.D.D. may fully participate in the civil suit without the possibility of self-incrimination. Plaintiff does not seek to stay her claims regarding jail conditions against Sheriff Jack Strain. But, because the Court has dismissed the claims against the Parish, the Court finds that

the claims against Sheriff Strain should be stayed as well in the interest of judicial economy and litigated with plaintiff's other causes of action.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to dismiss of defendants St. Tammany Parish, Walter Reed, and Ysonde Boland. The Court GRANTS plaintiff's motion for a limited stay of all remaining claims. Plaintiff's suit is stayed until September 1, 2013, and a scheduling conference will be held by telephone on July 11, 2013, at 10:15 a.m. for the purpose of scheduling a pre-trial conference and a trial, which is to be set within three months of the original trial date. The Court will initiate the telephone conference call and will be represented at the conference by its Case Manager.

New Orleans, Louisiana, this 26th day of June, 2013.

_____Sarah Vance_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE